FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAR 11  AM 9: 45

U.S. DISTRICT COURT
N.D. OF ALABAMA

FRANCISCO PONCE,                        )
                                        )
      Plaintiff,                        )
                                        )
      v.                                )      CV 98-BU-2309-S
                                        )
LAI'S CHINESE RESTAURANT, ET. AL,       )
                                        )      ENTERED
      Defendants.                       )      MAR 11 1999

Memorandum Opinion

      Francisco Ponce ("Plaintiff") filed this action on September 14, 1998, alleging various

claims under federal and state law against Defendants Lai's Chinese Restaurant ("Lai's"), Jack

Huang ("Mr. Huang"), and Bao Shan Chen ("Mr. Chen"). On November 20, 1998, Defendants

Lai's and Jack Huang filed a motion to dismiss certain of Plaintiff's claims and requesting

judgment on the pleadings on other claims.  (Doc. 11).  While that motion was pending,

Plaintiff filed a motion to amend his complaint to add more claims and to add as a defendant Mr.

Huang's wife, Julie Huang ("Mrs. Huang"). This Court granted that motion to amend, except

insofar as Plaintiff sought add a claim that Defendants had infringed upon his First Amendment

right to freedom of speech.[1]  After Plaintiff filed his amended complaint, Defendants Lai's and

Mr. and Mrs. Huang (collectively referred to hereinafter as "Defendants") filed in response

_____

      [1]The Court disallowed the proposed First Amendment claim because nothing in the proposed
amended complaint indicated that any Defendant had even conceivably engaged in state action.

24

another motion to dismiss and a motion to strike certain portions of the amended complaint. (Doc. 18). On December 8, 1998 and January 29, 1999, Plaintiff submitted "answers" to the aforementioned motions of Defendants. The Court will now endeavor to resolve Defendants' pending motions to dismiss, for judgment on the pleadings, and to strike portions of the amended complaint. (Doc's 11 & 18). The Court concludes that Defendants' motion to strike certain portions of Plaintiff's amended complaint is due to be DENIED. And for the reasons set forth below, the Court concludes that the defendants' motions to dismiss and for judgment on the pleadings are due to be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff's amended complaint shows the following: Lai's is a Chinese restaurant in Cullman, Alabama, that employs "circa" 20 employees and is owned by Mr. and Mrs. Huang. In 1995, Mr. Huang hired Plaintiff to work as a kitchen assistant at Lai's, preparing meats and vegetables. Mr. and Mrs. Huang were Plaintiff's supervisors. Mr. Chen was also employed by Lai's, as a cook. Plaintiff's employment at Lai's was ultimately terminated in November 1997.

Plaintiff worked at Lai's an average of 72 hours per week and received $250 per week. Plaintiff spoke among his coworkers and revealed that he was planning to file a complaint with the Department of Labor concerning his low wages. Mr. Huang apparently learned about this intention and raised Plaintiff's wages to $280 per week for 72 hours of labor, although Mr. Huang did not raise the wages of other employees.

A few weeks before he was terminated, Plaintiff complained to Mr. Huang about his wages, who told him that his earnings were low due to deductions to cover Lai's employees "health insurance." Plaintiff was thus made to believe that Lai's had an employee health insurance plan and that moneys were being deducted by Lai's for that purpose. Moreover, Lai's did not contribute taxes to Plaintiff's unemployment fund.

A sleeping cot was provided for Plaintiff so that he could remain "on call" after his normal 11 or 12 hours of work each day. According to the complaint, this sleeping area assigned to

Plaintiff "was unfit for sleeping, unsanitary, and without ventilation" and that in the summer the temperatures would reach "very uncomfortable levels" and the "heavy smell of the kitchen will never dissipate."

On November 15, 1997, Plaintiff was chopping onions in the kitchen at Lai's when Mr. Chen, carrying a large kitchen knife, started provoking Plaintiff with "fighting words and ethnic slurs."[2] Plaintiff refused to fight, telling Mr. Chen, "I do not want any trouble, go away and let me work." At that point, Mr. Chen grabbed Plaintiff's knife and brandished the two knives in his hands and attacked Plaintiff, stabbing him repeatedly in the chest. Although Mr. Huang was present and witnessed this stabbing, he did not attempt to stop it. Rather, he encouraged Mr. Chen "to provide 'entertainment.'" Mr. Huang kept laughing and gestured Mr. Chen to carry on the fight. Mr. Chen stabbed Plaintiff in the head until he started bleeding profusely.

In order to avoid bad publicity and "to dissipate his own reckless implication in the assault and battery upon [Plaintiff], Mr. Huang refused to call an ambulance. As the bleeding from Plaintiff's head became "terribly alarming," Plaintiff pleaded to be brought to a hospital. Mr. Huang, however, did not want to use his car to transport Plaintiff because there was too much bleeding, and Mr. Huang was afraid it would "stain his car." Instead, the keys to Plaintiff's car were taken from his pocket and Mr. Huang put Plaintiff in his own car and began driving. Mr. Huang, however, delayed bringing Plaintiff to a hospital. Plaintiff pleaded to be brought to a hospital, but Mr. Huang told him that Lai's has "no insurance" for its workers. After driving around the city for a while, Mr. Huang drove Plaintiff to Cullman Regional Medical Center, where he was sent to the emergency room and underwent surgery.

After surgery, the attending physician ordered Plaintiff to rest in bed and take one week off from work. Mr. Huang, however, denied him any time off, and laughed when Plaintiff advised him that he needed time off. Thereupon, Mr. Huang immediately terminated Plaintiff's

---

[2]Plaintiff is of hispanic origin. Mr. Chen is of Asian descent.

employment, and Plaintiff's personal belongings were removed from Lai's premises.

For his knife-wielding attack upon Plaintiff, Mr. Chen was found guilty on May 28, 1998 of criminal assault and ordered to pay restitution to Plaintiff. Plaintiff maintains that Mr. Chen had "performed prior acts of violence" and that "Mr. and Mrs. Huang knew or should have known that Chen could present a danger to coworkers . . ., surrounded with large knives and dangerous instruments."

On September 14, 1998, Plaintiff filed this action in this Court. The Court discerns the following smorgasbord of potential federal and state law causes of action to be alleged in Plaintiff's amended complaint:

(1) Lai's and Mr. and Mrs. Huang are liable under 29 U.S.C. § 206 of the Fair Labor Standards Act ("FLSA") for paying Plaintiff below minimum wage;

(2) Those same Defendants are liable under § 207 of FLSA for failing to pay Plaintiff overtime wages;

(3) Those same Defendants are liable under § 215(a)(3) of FLSA for discharging and discriminating against Plaintiff in retaliation for asserting his rights under the FLSA;

(4) Those same Defendants are liable to Plaintiff under the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. §§ 3301 et seq., for failing to make required unemployment tax contributions on Plaintiff's earnings;

(5) Those same Defendants are liable under the Consolidated Omnibus Budget Reconciliation Act of 1986 ("COBRA"), 29 U.S.C. §§ 1161 et seq., for misrepresenting that Lai's had a health insurance plan for its employees, for not providing Plaintiff continuing coverage since no insurance existed, for deducting for health insurance from Plaintiff's pay "for a non-existent health insurance" plan, and for discharging him for reporting COBRA violations;

(6) Mr. Huang and Lai's are liable for fraud under Alabama law for making representations that Lai's had an employee health insurance plan when none actually existed and for deducting amounts from Plaintiff's pay for such nonexistent insurance;

(7) Mr. Huang and Lai's are liable under the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 et seq., for failing to have first aid available and for delaying medical attention for Plaintiff after the knife attack by Mr. Chen;

(8) Mr. and Mrs. Huang and Lai's are liable under OSHA "for the unfit and unsanitary sleeping conditions imposed upon [Plaintiff]";

(9) Those same Defendants are liable under OSHA for discharging Plaintiff in retaliation for reporting OSHA violations;

(10) Those same Defendants are liable under Alabama law for discharging Plaintiff in retaliation for reporting OSHA violations;

(11) Mr. Chen is liable for assault and battery under Alabama law;

(12) Mr. Huang and Lai's are liable under Alabama tort law and the Alabama Employer's Liability Act ("AELA"), §§ 25-6-1 et seq., Ala. Code 1975, for assault and battery;

(13) Mr. Huang and Mr. Chen are liable to pay restitution ordered by a municipal court as a result of Mr. Chen's criminal assault conviction;

(14) Mr. Huang and Lai's are liable under Alabama tort law and the AELA for negligently or wantonly allowing or encouraging Mr. Chen to assault Plaintiff;

(15) Mr. Huang and Lai's are liable under Alabama tort law and the AELA for negligently or wantonly failing to have first aid available and negligently or wantonly delaying taking Plaintiff to receive medical treatment after Mr. Chen assaulted Plaintiff;

(16) Mr. and Mrs. Huang and Lai's are liable under Alabama tort law and the AELA for negligently hiring/retaining Mr. Chen, based upon knowledge of Mr. Chen's prior violent acts;

(17) Mr. and Mrs. Huang and Lai's are liable under Alabama law for terminating Plaintiff's employment for reporting violations of the AELA and for terminating Plaintiff's employment "after his on-the-job injury . . . in clear violation of public policy and whistle blower protection . . ."; and finally,

(18) Lai's is liable to give an "accounting" to the Plaintiff, and apparently to this Court, of business records concerning Plaintiff's wages, hours, overtime, earnings deductions for taxes and health insurance, taxes paid on Plaintiff's earnings, workers' compensation premiums, etc.

Plaintiff also requests that this Court grant him various forms of relief. With respect to his claims that he was wrongfully discharged for reporting violations of FLSA, COBRA, OSHA, and AELA, Plaintiff demands compensatory and punitive damages. As to his other FLSA claims, Plaintiff seeks compensatory damages for unpaid wages, an equal amount in liquidated damages, plus interest, costs, and attorney fees. Plaintiff has also demanded, in a separate count of the amended complaint, an "accounting" of his employment records at Lai's relating to his fraud, FLSA, COBRA, and FUTA claims. For his COBRA and state law misrepresentation claims, Plaintiff also demands "restitution of moneys withheld, punitive damages, costs, and attorney fees." On his assault and battery and negligence/wantonness claims, Plaintiff requests compensatory damages for lost earnings, "impairment to [his] earning capacity, and medical expenses . . . , " punitive damages, as well as attorney fees and Court costs.

## CONTENTIONS AND ANALYSIS

### I. Motions to Dismiss under Rule 12(b)(6), Fed. R. Civ. P.

In their motions, Defendants Lai's and Mr. and Mrs. Huang contend that a number of Plaintiff's claims are due to be dismissed under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted. When considering a motion for dismissal under Rule 12(b)(6), the Court is to take all the material allegations of the complaint as true while liberally construing the complaint in favor of the plaintiff. Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998), citing Roberts v. Florida Power & Light Co., 146 F.3d 1305, 1307 (11th Cir.1998). "A court may dismiss a complaint 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Id., quoting Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). The reason for

such a liberal construction of the complaint is that, at this stage of the litigation, the issue is not whether the plaintiff will ultimately prevail but whether she is entitled to offer evidence to support her claims.   Davis v. Monroe County Bd. of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997), citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

### A.  Claim for an "Accounting"

In Count VI of his amended complaint, Plaintiff separately lists as a claim his demand for an "accounting" from Lai's, in connection with his fraud, COBRA, FUTA, and FLSA claims. More specifically, Plaintiff requests that Lai's produce its records on Plaintiff's wages, hours, time, overtime, deductions from pay, and withholding of unemployment and social security taxes on his earnings, as well as records concerning Lai's workers' compensation insurance premiums, employee medical insurance plans, etc.  Defendants concede that Plaintiff may be entitled to such documents, but Defendants argue that Plaintiff's demand for them is more in the nature of a discovery request relating to Plaintiff's other asserted claims than a separate cause of action in itself.  The Court agrees with Defendants.  Plaintiff indeed may be entitled during the discovery process to compel Lai's to produce the records and documents he seeks through an "accounting" under Count VI of the amended complaint.  But the "Accounting" sought in Count VI is not a separate cause of action, and is dismissed insofar as it purports to be an individual claim.

### B.  FLSA claims

Defendants Lai's and Mr. and Mrs. Huang argue that Plaintiff's claim for retaliatory discharge under FLSA is due to be dismissed for failure to state a claim upon which relief can be granted.  Defendants contend that FLSA only protects employees from discharge in retaliation for having filed a complaint or having instituted a proceeding under FLSA, and Defendants emphasize that there is no allegation in the amended complaint that Plaintiff made any formal complaint to the Department of Labor or any other government agency.  Defendants further argue that there is no allegation that the defendants had any knowledge of any protected activity,

whether formal or informal, or that plaintiff's discharge was due to the employer's knowledge of protected activity.

FLSA's anti-retaliation provision makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). This language would literally seem to suggest that it limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor. However, the Eleventh Circuit Court of Appeals has recognized that, given FLSA's remedial purpose, even unofficial complaints by employees to a supervisor about a practice made illegal under the FLSA constitutes an assertion of rights protected under the FLSA's anti-retaliation provision. EEOC v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir.1989). Thus, this Court does not consider Plaintiff's failure to make a formal complaint to the Department of Labor to be fatal to his claim of retaliatory discharge under FLSA. And contrary to Defendants' assertion that there is no allegation that Lai's or Mr. or Mrs. Huang was aware that Plaintiff engaged in any protected activity, the amended complaint expressly charges that Mr. Huang learned that Plaintiff was planning to file a complaint with the DOL prior to terminating Plaintiff's employment and that Plaintiff voiced continued dissatisfaction about his long hours and low wages. The Court is not prepared to say that this claim must be dismissed under Rule 12(b)(6), given the liberal construction to be afforded the allegations at this stage of the litigation. Thus, the Defendants' motion to dismiss these allegations for failure to state a claim under FLSA is due to be denied.

Defendants next allege Plaintiff is seeking "compensatory damages" on his minimum wage and overtime violations under FLSA. Defendants argue that these damages are due to be dismissed insofar as they might exceed the scope of the remedies for such violations under 29

U.S.C. § 216(b), which sets out the remedies for FLSA violations.

With respect to his alleged minimum wage and overtime claims for FLSA violations under §§ 29 U.S.C. § 206 and 207, respectively, Plaintiff has demanded "compensatory damages for the unpaid wages owed to him, . . . ." Title 29, § 216(b) provides the exclusive remedies for violations of §§ 206 and 207 and states in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

It is clear to the Court that Plaintiff's requested "compensatory damages" only encompass the unpaid wages to which he would be entitled for Defendants' alleged failure to pay him minimum wage and overtime compensation. That is what the statute permits, and that is what the Court will allow. See See E.E.O.C. v. White and Son Enterprises, 881 F.2d at 1012. Defendants' motion on this issue is due to be denied.

Defendants also allege that Plaintiff has demanded punitive damages on his claim for retaliatory discharge under FLSA. Defendants argue that punitive damages are not authorized for such a claim under§ 216(b). In his response, Plaintiff maintains that he has not requested punitive damages with respect to his FLSA retaliation claim, but rather only "liquidated damages." However, the Court notes that while Plaintiff has not sought punitive damages for his minimum wage and overtime claims under §§ 206 and 207 of FLSA, set out in Count I of his amended complaint, Plaintiff has demanded "compensatory and punitive damages as a jury may determine . . ." in Count IV, which encompasses his claim for "[w]rongful discharge after reporting wage and hours violations under FLSA." Thus, the issue of whether Plaintiff may be entitled to punitive damages on his retaliation claim under FLSA is before the Court.[3]

---

[3]Further, Rule 54(c), Fed. R. Civ. P., provides, "Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Thus, it

29 U.S.C. § 216(b) provides in pertinent part as follows:

Any employer who violates the provisions of section 215(a)(3) of this title [the anti-discrimination provision of FLSA] shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

The Eleventh Circuit Court of Appeals has not addressed the issue of whether a plaintiff who proves that he was discharged in retaliation for having engaged in activity protected under FLSA might recover punitive damages. Indeed, it appears that the only Court of Appeals that has faced the question is that in the Seventh Circuit, which held that punitive damages were recoverable in such a circumstance. See Travis v. Gary Community Mental Health Center, Inc., 921 F.2d 108 (7th Cir. 1990), cert. den., 502 U.S. 812 (1991). In Travis, the Court reasoned that because the statutory language seems to broadly authorize legal relief to effectuate the purposes of the anti-retaliatory provisions of the FLSA and because punitive damages are traditionally available on retaliatory discharge claims, punitive damages were available where such a claim was brought under § 215(a)(3) of FLSA, notwithstanding that such damages were not expressly listed in the statute as an available remedy.

However, this Court is persuaded by Bolick v. Brevard County Sheriff's Dep't, 937 F.Supp. 1560 (M.D. Fla. 1996), that precedent in this circuit suggests that punitive damages may not be awarded under the retaliatory discharge provision of the FLSA. In Bolick, the court held that punitive damages were not authorized in retaliation claims under § 216(b), relying upon Dean v. American Security Ins. Co., 559 F.2d 1036 (5th Cir. 1977), cert. den., 434 U.S.

_____

would appear that even if a plaintiff fails to include a demand in his pleadings for punitive damages on a particular claim, the Court would be permitted, or even required, to allow such a recovery where the Court was of the opinion that such damages were authorized. Cf. Scutieri v. Paige, 808 F.2d 785, 792 (11th Cir. 1987)(holding that the trial court erred under Rule 54(c) in failing to instruct the jury on punitive damages, where plaintiff who had not demanded punitive damages in his complaint requested such damages before the case was submitted to the jury and punitive damages were authorized under substantive law).

1066 (1978). In Dean, Judge Lynne, a Senior District Judge from this District, sitting by designation, wrote on behalf of the Court that very similar language of the Age Discrimination in Employment Act ("ADEA"), providing for "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid wages or unpaid overtime compensation under this section," 29 U.S.C. § 626, did not authorize the awarding of punitive damages. 559 F.2d at 1039-40. While acknowledging that the statutory relief authorized would seem possibly include punitive damages when read in isolation, the Court determined that they were not authorized because, among other reasons, Congress failed to list punitive damages as an available remedy but could have easily done so if it had wished, and because Congress expressly included liquidated damages in an amount equal to lost earnings, suggesting that such liquidated damages would suffice as punishment. Id.[4]

Such is also the case with the FLSA. While the statutory language of § 216(b) refers to the availability of "such legal . . . relief as may be appropriate to effectuate the purposes of § 215(a)(3)," Congress did not specifically provide for the awarding of punitive damages on a retaliation claim, although it doubtlessly could have expressly done so. In addition, § 216(b) provides for an award of liquidated damages in an amount equal to the amount of payment lost because of the retaliatory adverse employment action. This express inclusion of an additional limited damages award up to the amount of compensatory damages suggests that Congress determined that such was a sufficient punishment and that additional amounts in excess, in the

---

[4] Dean, is, of course, binding precedent in the Eleventh Circuit and has been cited for the proposition that punitive damages are not available under the ADEA, despite the statutory reference to the availability of "such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter," see Goldstein v. Manhattan Industries, 758 F.2d 1435, 1146 (11th Cir. 1985).

form of "punitive damages," were not warranted. Thus, the Court concludes that Plaintiff, if successful on his retaliation claim under § 215(a)(3) of FLSA, would be entitled to liquidated damages in an amount up to the amount of compensatory damages for earnings lost. However, Plaintiff may not in addition recover punitive damages on this claim. Bolick.

### C. FUTA claim

Plaintiff alleges that Lai's failed to contribute unemployment taxes due on his earnings, as required by FUTA, 26 U.S.C. § 3301, et seq. Plaintiff purports to advance a claim under FUTA for this failure, upon which Plaintiff "demands compensatory damages and an accounting to the Court." Defendants argues that this claim is due to be dismissed because, they contend, there is no private right of action created by FUTA.

There is no express right of action for an employee to sue his employer under the Internal Revenue Code for the employer's failure to comply with FUTA. Nonetheless, at least two courts have discerned an implied private right of action to exist under FUTA, but only insofar as employees sought injunctive relief that required their employers to pay the government the past taxes owed and to make such payments in the future. See Ford v. Troyer, 25 F.Supp. 2d 723 (E.D. La. 1998); Campbell v. Miller, 836 F.Supp. 827 (M.D. Fla. 1993). Conversely, other courts have found that no implied right of action exists in favor of an employee under FUTA or under the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3101, et seq, against his employer, primarily on the ground that tax enforcement has traditionally been the domain of the government. See Spilky v. Helphand, 1993 WL 159944 (S.D. N.Y. 1993); Deleu v. Scaife, 775 F.Supp. 712 (S.D. N.Y. 1991); see also Salazar v. Brown, 940 F.Supp. 160 (W.D. Mich. 1989)(no private right of action under FICA).

Even assuming there is an implied right of action under FUTA for injunctive relief, Plaintiff does not request such relief. Plaintiff does not seek for this Court to order Lai's to pay unemployment taxes due to the government on Plaintiff's earnings. Rather, Plaintiff seeks

compensatory damages for himself, along with an "accounting" to this Court.[5]  This Court finds

no case holding that an employee may recover damages payable to him on the theory that his

employer failed to contribute unemployment or social security taxes.  This is unsurprising; the

unemployment and social security taxes owed under FUTA and FICA are liabilities owed to the

government, not to the employee.  An individual employee's eligibility for and receipt of

unemployment benefits not dependent upon his employer's compliance with FUTA, as

unemployment benefits paid to an individual come from generalized government funds, not a

personalized account funded by the unemployment tax contributions of the individual's

employers.  Thus, when an employer fails to pay unemployment taxes, it is clear that the

government suffers an injury in the form of lost revenue; it is very questionable, however, what

injury can be ascribed to the employee that provides him with standing under Article III of the

Constitution to pursue a FUTA claim.[6]  In any case, this Court holds, that Plaintiff may not

recover damages for himself based upon his employer's alleged failure to pay unemployment

taxes, because such funds are owed to the government, not to Plaintiff.  Moreover, the Court

fails to see how an "accounting" of the unemployment taxes allegedly owed, in the absence of

an injunction compelling that they be paid, would redress any injury that Plaintiff may have

suffered.[7] The Court concludes that Plaintiff's FUTA claim is due to be dismissed.

    D. COBRA claims

_____

[5]The Court has previously discussed Plaintiff's claim for an "accounting," in part A., supra.

[6] In Whitmore v. Arkansas, 495 U.S. 149, 155, (1990), the Supreme Court stated:
"To establish an Art. III case or controversy, a litigant first must clearly demonstrate that he has suffered an 'injury in fact.'  That injury, we have emphasized repeatedly, must be concrete in both a qualitative and temporal sense.  The complainant must allege an injury to himself that is 'distinct and palpable,' as opposed to merely '[a]bstract,' and the alleged harm must be actual or imminent, not 'conjectural' or 'hypothetical.'" (citations omitted).

[7]In order to have standing under Article III of the Constitution, the plaintiff must show, among other things, that there is a likelihood that the requested relief will redress the alleged injury.  Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 45-46 (1976).

Defendants next argue that Plaintiff's amended complaint fails to state a claim under COBRA. More specifically and to the point, Defendants argue that since Plaintiff's alleges that he was never covered under an employee insurance plan while he was employed at Lai's because such a plan did not exist, Plaintiff has not stated any claim for which he might recover under COBRA. The Court agrees.

COBRA amended the Employee Retirement Income Security Act of 1974 ("ERISA") to require employers to allow former employees to elect to continue coverage under the employer's group health insurance plan for up to 18 months following termination of employment. §29 U.S.C. 1161 et seq. However, in this case, the Plaintiff concedes, indeed affirmatively argues, that he was never covered under an employee group health insurance plan during his employment at Lai's. Thus, there was no health insurance coverage to be continued upon Plaintiff's termination. There is nothing in the statutory language of any section of COBRA or in interpreting caselaw suggesting that COBRA encompasses allegations that an employer fraudulently misrepresented the existence of health insurance coverage. Nor does the statutory language or caselaw indicate that COBRA gives rise to a retaliatory discharge claim. And even if it did, there is no allegation in the complaint that Plaintiff made any complaints, either formally or informally, concerning COBRA violations prior to his discharge. Thus, the Court holds that Plaintiff's COBRA claims are due to be dismissed for failure to state a claim upon which relief can be granted.

### E. OSHA claims

Defendants next assert that Plaintiff's claims under OSHA are due to be dismissed. Specifically, Defendants argue that OSHA does not give an employee a private right of action for the violation of an OSHA safety rule/regulation or for retaliatory discharge based upon complaints of such violations. Defendants also contend that Plaintiff's claim that he was discharged in retaliation for reporting OSHA violations is due to be dismissed because there is nothing in the amended complaint indicating that Plaintiff actually reported OSHA violations,

either formally or informally.

In his amended complaint Plaintiff appears to allege that Defendants are liable to him for OSHA violations directly under that Act. Plaintiff now contends, however, that he does not seek to bring claims pursuant to OSHA, based upon violations of its regulations. Rather, he asserts, he merely would introduce evidence of OSHA violations to show Defendants' negligence and wantonness with respect to his claims that Defendants failed to provide him prompt and adequate medical care after he was victimized by Mr. Chen's knife attack. The Court agrees that this would be proper. "Although OSHA does not create a private right of action, violation of an OSHA regulation is evidence of negligence or, in appropriate circumstances, negligence per se." Rabon v. Automatic Fasteners, Inc., 672 F.2d 1231, 1238 (5th Cir. Unit B 1982) (footnotes omitted). Thus, the Court concludes that while Plaintiff may not bring claims pursuant to OSHA itself, he might be able to present evidence of OSHA violations at trial in support of his negligence claim regarding Defendants' alleged failure to provide him with adequate medical care.

Plaintiff still seems to argue that he might maintain his federal claim that he was discharged in retaliation for having reported OSHA violations. The Court concludes, though, that Plaintiff may not himself maintain such a claim under federal law, even if he had actually complained about OSHA violations. OSHA does prohibit an employer from discharging an employee for engaging in certain protected activities:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the excercise by such employee on behalf of himself or others of any right afforded by this chapter.

29 U.S.C. § 660(c)(1). However, any employee who believes that he has been discharged or discriminated against in violation of § 660(c)(1) may file a complaint within 30 days with the Secretary of Labor, who then must investigate the claim and decide whether to bring an action

in federal court to obtain relief, including rehiring or reinstatement of the employee to his former position with back pay. 29 U.S.C. § 660(c)(2). Thus, courts agree that a claim of retaliatory discharge based upon an employee's alleged reporting of OSHA violations may only be brought by the Secretary, not the individual employee. See, e.g., George v. Aztec Rental Center Inc., 763 F.2d 184, 186 (5th Cir. 1985); Taylor v. Brighton Corp., 616 F.2d 256 (6th Cir. 1980). Plaintiff's claim that Defendants are liable under OSHA for retaliatory discharge is due to be dismissed.

### F. Retaliatory discharge claims under Alabama state law

Plaintiff seems to maintain that he might recover under Alabama state law for retaliatory discharge based on several theories. Plaintiff appears to contend that his discharge was unlawful in that it was done (1) because he had suffered an on-the-job injury and would miss a week of work, (2) because he reported the alleged assault and battery committed upon him and Mr. Huang's failure to secure him prompt medical care after that attack, or (3) because he reported OSHA violations or other threats to health and safety. Plaintiff characterizes these as "whistle-blower" and "public policy" retaliatory discharge claims. Defendants, on the other hand, argue that there is no "public policy" exception to the at-will employment doctrine under Alabama law. Therefore, Defendants argue, Plaintiff's allegations fail to state a cause of action for retaliatory discharge that is recognized under Alabama law.

It is well established that Alabama adheres to the "at-will" employment doctrine, which means that employees or employers generally can terminate the employment relationship at any time, with or without cause or justification. Allied Supply Co. v. Brown, 585 So.2d 33, 35 (Ala.1991). If the employment is terminable at will, the employer may even act maliciously in terminating the employee. Salter v. Alfa Insurance Co., 561 So.2d 1050, 1054 (Ala.1990). Even though this doctrine has been criticized as harsh, it remains the law in Alabama. Howard v. Wolff Broadcasting Corp., 611 So.2d 307, 309 (Ala. 1992). Furthermore, the Alabama Supreme Court has consistently declined to judicially create a public policy exception to the

employment "at-will" doctrine. See id. at 312, and cases cited therein. Instead, the Court has left it to the state legislature to create statutory exceptions. See id.; Ala.Code 1975, § 25-5-11.1 (permitting an employee terminated solely because he or she has made a claim for worker's compensation benefits to file an action for damages); and Ala.Code 1975, § 12-16-8.1 (preventing dismissal of an employee because the employee answered a call for jury service). Thus, Plaintiff may not recover in the instant case under Alabama state law based upon the theory that his termination violated "public policy," because Plaintiff has not alleged facts suggesting that he was not an at-will employee, and there is no nonstatutory public policy exception to the "at-will" employment doctrine under Alabama law.

However, one of the legislatively-created exceptions to the "at-will" employment doctrine is codified at § 25-5-11.1, Ala. Code 1975, part of the Alabama Workers' Compensation Act. That section provides:

> "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter or solely because the employee has filed a written notice of violation of a safety rule pursuant to subdivision (c)(4) of Section 25-5-11."

The referenced subsection, § 25-5-11(c)(4), specifies that an employee may give written notice of a violation of a "specific written safety rule of the employer," in order to establish that the death or permanent total disability of the notifying employee was caused by a "willful and intentional violation" of such a safety rule, where the employee's condition is caused by an injury suffered within six months of the violating employee's reception of the written notice.

The plain language of the first section of § 25-5-11.1 applies to employees who are discharged for seeking workers' compensation benefits. However, there is no allegation that Plaintiff ever sought workers' compensation benefits, that he had an intention to seek them, or that Defendants feared that he might do so in the future. To the extent that Plaintiff might be claiming that he was discharged in violation of § 25-5-11.1 in that he was terminated after

Page 17 of 23

suffering an on-the-job injury,[8] the Alabama Supreme Court has expressly held that an employer may lawfully discharge an employee based upon job absences caused by an on-the-job injury, so long as it does not discharge him solely for seeking workers' compensation benefits. See Smith v. Dunlop Tire Corp., 663 So.2d 914 (Ala.1995) (holding that an employer could terminate an employee pursuant to a "no fault" absentee policy even though the employee's absences were caused by work-related injuries).

There is some authority suggesting, however, that an employee who is discharged solely because he lodges a complaint regarding his employer's alleged safety violations may bring an action for retaliatory discharge pursuant to § 25-5-11.1. In Morgan v. Northeast Alabama Regional Med. Center, 624 So. 2d 560, 563 (Ala. 1993), the Alabama Supreme Court held that an employee who alleged that he was terminated because he filed a formal written complaint with the Occupational Health and Safety Administration and voiced a number of oral complaints to his employer about his being exposed to hazardous levels of asbestos at work could recover for retaliatory discharge under § 25-5-11.1, Ala. Code 1975. However, in the instant case there is no allegation that Plaintiff even threatened to take any steps towards contacting the Occupational Health and Safety Administration regarding alleged OSHA violations at Lai's prior to his termination. Indeed, the amended complaint does not charge that Plaintiff made any specific complaints to anyone about an allegedly serious safety or health hazard at Lai's. Accordingly, this Court concludes that the Plaintiff's amended complaint fails to state a cause of action under § 25-5-11.1, Ala. Code 1975.

### G. Claim for Failure to Pay Court-Ordered Restitution

---

[8]While the Plaintiff's allegations that he was immediately discharged upon requesting one week off to recover from his knife wounds might seem to suggest a potential claim under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq., Plaintiff has not specifically pled such a claim. Moreover, it does not appear that Plaintiff could succeed on an FMLA claim under the facts alleged here. Plaintiff has alleged that Lai's employs "circa" 20 employees, but to recover under FMLA a plaintiff must prove that his employer employs 50 or more employees. See 29 U.S.C. §§ 2611(2)(B)(ii) and 2611(4)(A)(i); Paleologos v. Rehab Consultants, Inc., 990 F.Supp. 1460, 1468 (N.D. Ga. 1997).

Plaintiff seems to allege that Mr. Huang is liable to Plaintiff, based upon an order by a state municipal court judge to pay restitution. It appears that when Mr. Chen was convicted of criminal assault on May 28, 1998, for his attack upon Plaintiff, the municipal court judge ordered Mr. Chen to pay restitution to Plaintiff. Plaintiff alleges that Mr. Huang should have been also charged as a defendant in that criminal case and argues that he is liable to pay restitution based upon the municipal court order. However, the question of whether or not Mr. Huang should have been charged has no bearing upon the liability of Mr. Huang under the municipal court's order to pay restitution. It may be that Mr. Huang and Lai's could be liable for assault and battery, along with Mr. Chen, based upon a civil action for damages, but neither Mr. Huang nor Lai's is alleged to have been named in the municipal court's order to pay restitution based on Mr. Chen's criminal conviction. It is, therefore, almost too elementary that neither Mr. Huang nor Lai's is obliged to pay the court-ordered restitution imposed only upon Mr. Chen. Thus, to the extent Plaintiff claims that Lai's and Mr. Huang are liable to pay the restitution ordered by the municipal court following Mr. Chen's conviction, such claims are due to be dismissed.

## II. Supplemental Jurisdiction

Defendants contend that this Court lacks jurisdiction over Plaintiff's remaining state law claims. The remaining state law claims are (1) that Mr. Chen, Mr. Huang, and Lai's are liable for the intentional tort of assault and battery, the latter two defendants pursuant to the AELA and all three defendants under Alabama common law tort principles; (2) that Mr. Huang and Lai's are liable under Alabama tort law and the AELA for the Mr. Huang's negligent or wanton failure to stop Mr. Chen from attacking Plaintiff; (3) that Mr. and Mrs. Huang and Lai's negligently hired/retained Mr. Chen and are liable, under Alabama tort law and the AELA, for the injuries Mr. Chen inflicted upon Plaintiff; (4) that Mr. Huang and Lai's are liable, under Alabama tort law principles and the AELA, for negligently or wantonly failing to provide prompt and adequate medical care to Plaintiff after Mr. Chen attacked him; and (5) that Lai's

and Mr. Huang committed fraud by misrepresenting that Plaintiff was covered by an employee insurance plan at Lai's and by deducting amounts from Plaintiff's earnings.[9] Defendants have successfully argued that Plaintiff has failed to state a claim upon which relief may be granted with respect to his claims under FUTA, OSHA, and COBRA. Thus, Defendants emphasize that the only remaining federal claims are the Plaintiff's FLSA claims based on (1) failure to pay minimum wage, (2) failure to pay overtime, and (3) retaliatory discharge based on Plaintiff's alleged informal complaints regarding same. Defendants correctly acknowledge that this Court has federal-question jurisdiction over these three federal claims pursuant to 28 U.S.C. § 1331. Defendants argue, however, that these federal claims are so unrelated to Plaintiff's remaining state law claims that this court lacks supplemental jurisdiction over the state law claims.

The supplemental jurisdiction statute, 28 U.S.C. § 1367, provides in relevant part:

(a) Except as provided in subsections (b) and (c) ..., in any civil action of which district courts shall have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

...

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Subsection (a) of § 1367 establishes the district court's power to exercise supplemental jurisdiction over all supplemental claims which form part of the same "case or controversy"

---

[9]The Court notes that Defendants have not argued here, nor have they set forth in their answer, the affirmative defense that some or all of Plaintiff's remaining state law claims are foreclosed by the Alabama Workers' Compensation Act, §§ 25-5-1, et seq.

under Article III of the Constitution. Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1566 (11th Cir.1994)("By its language, section 1367(a) authorizes a court to hear supplemental claims to the full extent allowed by the 'case or controversy' standard of Article III."). "The constitutional 'case or controversy' standard confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim." Lucero v. Trosch, 121 F.3d 591, 597 (11th Cir. 1997), citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 724-25 (1966). The Eleventh Circuit has further explained that claims are part of the same "case or controversy" when they "arise from the same facts, or involve similar occurrences, witnesses, or evidence." Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996), citing Palmer, supra. A federal court's power or jurisdiction to entertain supplemental state claims is ordinarily determined on the pleadings. Lucero, 121 F.3d at 598. The exercise of supplemental jurisdiction is left to the discretion of the district court. Beck v. Prupis, 162 F.3d 1090 (11th Cir. 1998).

The Court concludes that it has supplemental jurisdiction over Plaintiff's state law fraud claim and that the Court should retain jurisdiction over it, but the Court concludes that it does not have supplemental jurisdiction over Plaintiff's other remaining state law claims. Two of Plaintiff's FLSA claims involve failure to pay minimum wage and overtime. These allegations are related to those forming the basis of Plaintiff's fraud claim, as Defendant Mr. Huang allegedly told Plaintiff that his wages were low due to deductions for employee health insurance, which Plaintiff claims did not exist. Plaintiff's allegations concerning his other remaining tort claims against Defendants, however, do not share any real nexus with the federal FLSA claims. The factual occurrences surrounding Plaintiff's injuries from the alleged assault and battery and surrounding Defendants' alleged negligent or wanton retention of Mr. Chen, negligent or wanton failure to stop the attack, and negligent or wanton failure to provide prompt medical care are too tenuously related to his claims that he was not paid minimum wage, not paid overtime and discharged for reporting same to supply this Court with supplemental jurisdiction.

Page 21 of 23

Accordingly, the Court determines that all of Plaintiff's remaining state law claims, with the exception of his fraud claim, are due to be dismissed without prejudice.

### III. Pleading Fraud with Particularity

Defendants argues that Plaintiff has failed to plead his fraud claim with the particularity required by Rule 9(b), Fed. R. Civ. P.[10] That rule provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants '*1371 against spurious charges of immoral and fraudulent behavior.' " Durham v. Business Management Associates, 847 F.2d 1505, 1511 (11th Cir.1988) (citations omitted). However, "'Rule 9(b) must be read in conjunction with Rule 8(a) [of the Federal Rules of Civil Procedure], which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief.'" Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1371(11th Cir. 1997), quoting O'Brien v. National Property Analysts Partners, 719 F.Supp. 222, 225 (S.D.N.Y.1989)(further citations omitted). See also Durham, 847 F.2d at 1511 ("The application of [Rule 9(b) ] must not abrogate the concept of notice pleading.").

Under Rule 9(b), the Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud. Brooks, 116 F.3d at 1370, 1380-81, citing Fitch v. Radnor Industries, 1990 WL 150110, at *2 (E.D.Pa. Sept.27, 1990)(further citations omitted).

---

[10]Defendants argue that if Plaintiffs' fraud claim is not pleaded with the particularity required under Rule 9(b), Fed. R. Civ. P., then that claim is due to be dismissed. However, even if Plaintiff's pleadings do not comply with Rule 9(b), such does not mandate dismissal of the claim; instead, Plaintiff would first be given an opportunity to replead his fraud claim. See Cooper v. Blue Cross and Blue Shield of Florida, Inc., 19 F.3d 562, 568 (11th Cir. 1994); Pelletier v. Zweifel, 921 F.2d 1465, 1492 n.58 (11th Cir. 1991).

However, "alternative means are also available to satisfy the rule." <u>Durham</u>, 847 F.2d at 1512, citing <u>Seville Indus. Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir.1984), cert. denied, 469 U.S. 1211 (1985) (list containing allegations of fraud describing nature and subject of statements found to be sufficient, even where precise words used were not alleged).

The Court concludes that Plaintiff's amended complaint pleads fraud with the particularity required under FRCP 9(b). Plaintiff has alleged that he was expressly told that his pay was low because of deductions from his pay to cover health insurance and that this statement was false because no such insurance existed. Plaintiff alleged that this statement was made by Mr. Huang a few weeks before Plaintiff was terminated from his employment in November 1997. Plaintiff claimed he was misled because he believed that deductions were being made for health insurance that did not exist. Plaintiff's allegations suggest that Defendants profited by the fact that they allegedly deducted monies from Plaintiff's pay but gave him nothing in return. Defendants' motion on this issue is due to be denied.

### IV. Motion to Strike Portions of the Amended Complaint

Defendants move pursuant to Rule 12(f), Fed. R. Civ. P., to strike portions of the amended complaint. Under that rule, a party may move the court to strike any matter any pleading as "redundant, immaterial, impertinent, or scandalous . . . " The Court concludes that this motion is due to be denied.

DONE and ORDERED this _____ day of March 1999

_____

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE